UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZENSAR TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-10467 |
| ) | |
| PAREXEL INTERNATIONAL, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ANSWER AND COUNTERCLAIM OF
DEFENDANT PAREXEL INTERNATIONAL, LLC**

Pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, Defendant PAREXEL International, LLC ("PAREXEL" or "Defendant") hereby answers the Complaint (the "Complaint") (Doc. No. 1) of Plaintiff Zensar Technologies, Inc. ("Zensar" or "Plaintiff") as follows:

**PARTIES**

1. PAREXEL lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint and therefore denies those allegations.

2. PAREXEL admits that it is a Delaware limited liability company with its principal offices in Waltham, Massachusetts. PAREXEL denies the remaining allegations set forth in Paragraph 2 of the Complaint.

**JURISDICTION AND VENUE**

3. PAREXEL admits that a contract exists between the parties expressly requiring the application of Massachusetts law. PAREXEL denies the remaining allegations set forth in Paragraph 3 of the Complaint.

4. PAREXEL admits the allegations contained in Paragraph 4 of the Complaint.

5. PAREXEL admits that it is located within this judicial district and that venue is appropriate for this matter pursuant to 28 U.S.C. § 1391(a). PAREXEL denies the remaining allegations set forth in Paragraph 5 of the Complaint.

**FACTS GIVING RISE TO CLAIM**

6. PAREXEL lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint and therefore denies those allegations.

7. PAREXEL admits the allegations contained in Paragraph 7 of the Complaint.

8. PAREXEL admits that it entered into a Master Services Agreement ("MSA") with Zensar on or about July 2, 2008 and that certain services and deliverables to be provided by Zensar were to be described in subsequent Statements of Work ("SOWs"). PAREXEL states that the MSA – which is attached as <u>Exhibit A</u> to the Complaint – and the SOWs – one of which is attached as <u>Exhibit B</u> to the Complaint – are documents that speak for themselves and denies any interpretations of those documents alleged in Paragraph 8 of the Complaint. Responding further, PAREXEL lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 8 of the Complaint, and any footnotes thereto, and therefore denies those allegations.

9. PAREXEL states that the SOW attached as <u>Exhibit B</u> to the Complaint is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 9 of the Complaint and any footnotes thereto.

**Relevant MSA Provisions**

10. PAREXEL states that the MSA is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 10 of the Complaint.

11. PAREXEL states that the MSA is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 11 of the Complaint.

12. PAREXEL states that the MSA is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 12 of the Complaint.

**Amendment to Statement of Work**

13. PAREXEL admits that the parties entered into an amendment to the SOW ("Amendment 1 to SOW") on or about April 7, 2010, and that a copy of that document is attached to the Complaint at <u>Exhibit C</u>.  Responding further, PAREXEL states that Amendment 1 to SOW is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 13 of the Complaint.

14. PAREXEL states that Amendment 1 to SOW is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 14 of the Complaint.

15. PAREXEL states that Amendment 1 to SOW is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 15 of the Complaint.

16. PAREXEL states that Amendment 1 to SOW is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 16 of the Complaint.

17. PAREXEL states that Amendment 1 to SOW is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 17 of the Complaint.

**Final Written Agreement Modification**

18. PAREXEL admits that it signed a letter (which Zensar refers to as the "Amended Agreement") on or about October 28, 2010. Responding further, PAREXEL states that the letter is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 18 of the Complaint and any footnotes thereto. PAREXEL denies any remaining allegations in Paragraph 18 of the Complaint, and any footnotes thereto.

19. PAREXEL states that the Amended Agreement is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 19 of the Complaint.

20. PAREXEL states that the Amended Agreement is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 20 of the Complaint and any footnotes thereto.

21. PAREXEL states that the Amended Agreement is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 21 of the Complaint.

**Zensar's Satisfactory Completion of All Deliverables**[1]

22. PAREXEL states that the Amended Agreement is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 22 of the Complaint and any footnotes thereto.

23. PAREXEL states that the Amended Agreement is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 23 of the Complaint.

---

[1] PAREXEL includes this and the other headings from Zensar's Complaint solely for the sake of continuity and does not admit any allegation(s) contained therein.

Responding further, PAREXEL otherwise denies the allegations set forth in Paragraph 23 of the Complaint.

24. With regard to the first sentence of Paragraph 24 of the Complaint, PAREXEL states that the document attached to the Complaint as its <u>Exhibit F</u> is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 24 of the Complaint. Responding further, PAREXEL otherwise denies the allegations contained in Paragraph 24 of the Complaint.

25. PAREXEL denies the allegations set forth in Paragraph 25 of the Complaint.

26. PAREXEL states that the Amended Agreement and Agreement 1 to SOW are documents that speak for themselves and denies any interpretations of those documents alleged in Paragraph 26 of the Complaint. Responding further, PAREXEL otherwise denies the allegations set forth in Paragraph 26 of the Complaint.

## COUNT I
## BREACH OF CONTRACT

27. PAREXEL repeats and incorporates herein by reference its answers to each of the above paragraphs.

28. PAREXEL admits that the parties entered into a valid written contract. Responding further, PAREXEL states that the documents listed in Paragraph 28 of the Complaint are documents that speak for themselves and denies any interpretations of those documents alleged in Paragraph 28 of the Complaint. PAREXEL otherwise denies the allegations set forth in Paragraph 28 of the Complaint.

29. PAREXEL states that the Amended Agreement is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 29 of the Complaint.

Responding further, PAREXEL otherwise denies the allegations set forth in Paragraph 29 of the Complaint.

30. PAREXEL states that the Amended Agreement is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 30 of the Complaint. Responding further, PAREXEL otherwise denies the allegations set forth in Paragraph 30 of the Complaint.

31. PAREXEL states that Agreement 1 to SOW is a document that speaks for itself and denies any interpretations of that document alleged in Paragraph 31 of the Complaint. Responding further, PAREXEL otherwise denies the allegations set forth in Paragraph 31 of the Complaint.

32. PAREXEL denies the allegations set forth in Paragraph 32 of the Complaint.

33. PAREXEL denies the allegations set forth in Paragraph 33 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Second Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and estoppel.

### Third Defense

Plaintiff's claims are barred, in whole or in part, as a result of accord and satisfaction.

### Fourth Defense

Plaintiff's claims are barred, in whole or in part, as a result of Plaintiff's failure to mitigate damages.

**Fifth Defense**

Plaintiffs claims are barred, in whole or in part, due to failure of consideration.

## COUNTERCLAIM

For its Counterclaim, PAREXEL states the following:

### PARTIES

1.      Counterclaim Plaintiff PAREXEL International, LLC ("PAREXEL") is a Delaware corporation with its principal place of business at 195 West Street, Watham, Massachusetts 02451.

2.      Counterclaim Defendant Zensar Technologies, Inc. ("Zensar") is a California corporation with its principal place of business at 1415 W. 22nd Street, Suite 925, Oak Brook, Illinois 60523.

### FACTS

3.      PAREXEL is a contract research organization that provides contract research organization services, including clinical research, drug development, statistics, data management, regulatory, central laboratory, imaging, interactive voice and web response, and other services associated with the clinical trial management process.

4.      Zensar is corporation engaged in the business of providing information technology services and support, including implementation of enterprise software solutions, to other corporations.

5.      On or about July 2, 2008, PAREXEL and Zensar entered into a Master Services Agreement (the "MSA") by which PAREXEL engaged Zensar to provide certain services and deliverables to be described in one or more subsequent Statement(s) of Work ("SOWs").  A true

and accurate copy of the MSA has been attached to Zensar's Complaint (the "Complaint") (Doc. No. 1) as its Exhibit A.

6. Section 4 of the MSA, entitled "Representations and Warranties," provides in its part (a) as follows:

> Services. [Zensar] represents and warrants that its Services hereunder shall be provided by qualified individuals in a professional and workmanlike manner conforming to the highest industry standards and practices, and in strict accordance with all applicable law, regulations, codes and standards of government agencies, authorities or self regulatory organizations having jurisdiction, and shall conform to any additional warranties, specifications, service levels and time frames in the SOW.

7. On or about July 2, 2008, PAREXEL and Zensar entered into a SOW pursuant to the MSA. A true and accurate copy of that SOW, with redactions to protect confidential information, has been attached to the Complaint as its Exhibit B. According to the SOW, the services and deliverables concerned "Oracle Chart of Accounts Redesign, 11.5.10 Project Costing & Billing, Upgrade to R12, and R12 Purchasing & iProcurement implementation services (the 'Project')."

8. The primary focus of Zensar's services and deliverables pursuant to the SOW (the "Zensar Project") was the installation and implementation of Oracle enterprise software at PAREXEL. The software was meant to automate much of the contract, purchasing, procurement, and billing functions of PAREXEL's worldwide operations, including processing invoices, accounts payable, accounts receivable, travel and entertainment expenses, and making payments to the appropriate bank accounts.

9. Pursuant to the SOW, the estimated cost of the Zensar Project was $4,083,524, and the first phase of the Oracle COA Redesign, Project Costing & Billing, Upgrate to R12 and

Purchasing and iProcurement System Implementation project was to be completed by June 7, 2010.

10.     Zensar failed to meet its obligations under the SOW almost from the beginning of the project.  The first technical lead provided by Zensar, Michael Wyszynski, failed to follow PAREXEL's instructions, failed to properly and/or effectively manage Zensar's off site team in India, failed to perform proper quality assurance on software developers' code, and failed to respond to communications from PAREXEL, either by providing untimely responses or by not responding at all.  Ultimately, Mr. Wyszynski performed so poorly that Zensar had to replace him well after the project had begun.

11.     The project management that Zensar was supposed to provide was extremely weak and sometimes nonexistent.  This was an extremely complex project with multiple tracks being worked on simultaneously.  Zensar failed to provide PAREXEL with project plans and status reports as required by the SOW, even after PAREXEL made numerous requests for these reports.  The purpose of these plans and reports was to allow PAREXEL and Zensar to coordinate and integrate the multiple tracks being worked on and to determine whether milestones were being reached and/or completed on a timely basis.

12.     Zensar's failure to provide project plans and to integrate the individual track plans with each other caused multiple delays and confusion.  PAREXEL had great difficulty accurately determining project status, managing the project's schedule, and performing adequate quality assurance testing.  PAREXEL eventually had to hire an additional project manager to get the project under control.

13.     Zensar's lack of planning and integration prevented adequate testing of the systems to make sure they worked properly and successfully integrated with each other.  The

time period to test the system and correct any problems was shortened due to Zensar's delays. Thus, testing of the system was both weakened and hurried in order to get the system in place before the beginning of PAREXEL's fiscal year.

14.     PAREXEL ended up performing much of the work that should have been performed by Zensar, including direction and development teams. PAREXEL discovered that the off-site staff in India was very inexperienced and unable to do many of the tasks they were assigned to do.

15.     The project was initially scheduled to "go live" in January-February of 2010. As a result of Zensar's poor performance and the delays it caused, the Parties agreed to modify the SOW through an Amendment executed on or about April 7, 2010 – well after the project was supposed to have been completed.

16.     This Amendment to the SOW ("Amendment 1") required Zensar to "provide the necessary Go-Live and post-production resources to ensure that all systems are operating in accordance with the Quality Acceptance outlined in Section III [of the Amendment] and to support the resolution of reported systems issues." Zensar was further required to "provide support during the 30 days after production cutover, including the July 2010 close." (Amendment 1, Section I. A., attached as Exhibit C to the Complaint.)

17.     Because of numerous delays caused by Zensar, the time for PAREXEL to conduct user acceptance testing was substantially reduced. Thus, PAREXEL did not have sufficient time to test the software provided by Zensar to ensure that it worked not only in initial testing but also, more critically, over time as the data load on the new system increased and became heavily used in practice.

18. It was not until early July 2010 that a portion of the new system was able to "go live," albeit with minimal functionality. As the delays and problems continued, Zensar asked PAREXEL for another partial payment in order for it to recognize some revenue. The parties subsequently signed the October 28, 2010 letter attached to the Complaint as Exhibit D setting forth Zensars continuing obligations under Amendment 1.

19. Although portions of the software appeared to work in initial tests, many, severe problems occurred as the system went live.

20. For example, the Travel and Entertainment Upload Interface malfunctioned and did not work for weeks. This caused substantial problems at PAREXEL, a company of over 9,000 employees who work in over 50 countries around the world. During the time that the system was not working, many employees could not be paid for their travel and entertainment expenses.

21. PAREXEL also encountered severe problems uploading vendor invoices into the ORACLE system. Many would not load at all, and often those that did load would not process correctly into PAREXEL's ORACLE accounts payable system.

22. Zensar's negligence in converting supplier masterfile data into the new ORACLE system resulted in PAREXEL erroneously paying into incorrect bank accounts. PAREXEL still has not recovered all of these incorrect payments.

23. To make matters worse, by the time the software went live, Zensar had put some of its people working on the PAREXEL project onto other projects. Zensar did this even though it was expressly obligated to continue working on any problems that arose with the software until 30 days after the production cutover, including the July 2010 close.

24. Zensar also refused to completely review the code they provided and correct performance problems in the software until PAREXEL IT personnel identified and reported to Zensar specific software coding issues.

25. Ultimately, Zensar's performance proved to be so unreliable and slow in the face of PAREXEL's growing and urgent needs to correct software problems that PAREXEL was forced to add or redirect existing IT resources to the project and to hire other outside vendors to fix the problems.

26. Despite all of these problems, and the great time and expense PAREXEL has been forced to incur to correct them, Zensar ceased negotiating a resolution to this contract dispute and, without informing PAREXEL, filed the instant Complaint, demanding not only the $640,000 it claims to be owed for services provided, but also a $500,000 "Quality Incentive" bonus that was available under Amendment 1 only if Zensar delivered all of its work on time and with under the quality criteria set forth therein.

27. Zensar's deplorable performance has not only disqualified it from receiving any "Quality Incentive" bonus but has also caused PAREXEL to incur substantial damages that should be deducted from the $640,000 that Zensar alleges it is also owed.

### COUNT I
### BREACH OF CONTRACT

28. The averments in the paragraphs above are hereby incorporated by reference as though fully set forth herein.

29. PAREXEL entered into a valid, written contract with Zensar, reflected in the MSA, the SOW, Amendment 1, and the Final Amendment.

30. Zensar has breached its duties under the written contract by failing to deliver the software as required on a timely basis and by failing to adequately correct problems with that software as required under the contract.

31. PAREXEL has been damaged as a result of Zensar's breaches of the contract.

**WHEREFORE**, PAREXEL prays that this Court find that Zensar has breached its contract with PAREXEL and that Zensar be ordered to pay damages to PAREXEL in an amount to be determined by the Court to include, without limitation, actual damages, consequential damages, statutory interest and costs, as well as any and all further relief as this Court may deem just.

PAREXEL INTERNATIONAL, LLC
By its attorneys,

*/s/ Arthur J. Guray*
Kurt S. Kusiak (BBO #559254)
  ksk@sally-fitch.com
Arthur J. Guray (BBO #673540)
  ajg@sally-fitch.com
SALLY & FITCH LLP
One Beacon Street, 16th Floor
Boston, Massachusetts 02108
(617) 542-5542

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each party by ECF on June 1, 2011.

*/s/ Arthur J. Guray*
Arthur J. Guray